UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:23-CR-75 DRL-MGG |
| ROBERT HOLLINS, JR., | |
| Defendant. | |

## OPINION AND ORDER

The government charges Robert Hollins, Jr. with possessing with the intent to distribute a substance containing cocaine, *see* 21 U.S.C. §§ 841(a)(1), (b)(1)(c), possessing with the intent to distribute a substance containing fentanyl, *see* 21 U.S.C. §§ 841(a)(1), (b)(1)(c), and unlawfully possessing a firearm as a felon, *see* 18 U.S.C. § 922(g)(1). Mr. Hollins moves to suppress evidence obtained by law enforcement pursuant to three search warrants spanning two locations in South Bend, Indiana on November 1, 2023. He says the warrants lacked probable cause and particularity. The court denies the motion.

## FACTUAL FINDINGS

These facts emerge from the evidence.[1] *See* Fed. R. Crim. P. 12(d). On September 28, 2023, Mr. Hollins was charged in state court with stalking, stalking in violation of a protective order, and four counts of invasion of privacy [19-1]. The charges related to several alleged incidents between June 17 and September 18, 2023, when Mr. Hollins contacted an individual (T.J.) both in person and through a cellphone [*id.* 4]. An arrest warrant ensued on September 28, 2023 [*id.* 3].

---

[1] The record consists of three November 1, 2023 search warrants and affidavits from 11:13 a.m. [17 at 18 (Att. 1)], 2:10 p.m. [17 at 26 (Att. 2)], and 4:32 p.m. [17 at 41 (Att. 3)], a September 28, 2023 arrest warrant for Mr. Hollins [19-1 (Ex. 1)], another November 1, 2023 search warrant and affidavit for records related to a cellphone number [19-2 (Ex. 2)], a police report from September 14, 2023 [19-3 (Ex. 3)], and a police report from October 23, 2023 [19-4 (Ex. 4)]. Without a dispute about material facts, the court declines an evidentiary hearing.

On November 1, 2023, ATF Special Agent Kyle Lerch submitted a series of four search warrant applications to Judge Elizabeth Hurley in the St. Joseph Superior Court. At 8:32 a.m., Special Agent Lerch obtained a search warrant for records from T-Mobile USA, Inc. related to a cellphone number associated with Mr. Hollins, as well as permission to use a pen register device and digital analyzer/cell-site simulator technology to determine the cellphone's physical location [19-2 at 11]. This motion presents no issue with this first search warrant, only the three that came later to facilitate a search of two South Bend residences.

A. *First Challenged Search Warrant.*

In his search warrant affidavit, Special Agent Lerch described and included a picture of a residence on South 24th Street as the place to be searched [17 at 19 (0281)]. He sought evidence of invasion of privacy under Indiana Code § 35-46-1-15.1, including the same cellphone and the person of Robert Hollins, Jr. [*id.*]. He also supplied a picture of Mr. Hollins [*id.* 20 (0282)].

In support, Special Agent Lerch recounted that Mishawaka police officers stopped Mr. Hollins in his vehicle in South Bend on March 23, 2023, and found seven ounces of marijuana (nearly 200 grams), two digital scales, and less than a gram of fentanyl powder [*id.* 21 (0283)]. Mr. Hollins admitted to possessing marijuana and provided his cell number [*id.*]. Special Agent Lerch said that his experience and training indicated that seven ounces was a distribution amount of marijuana, not personal use [*id.*].

Special Agent Lerch also detailed a September 14, 2023 traffic stop in South Bend, during which Mr. Hollins again identified the same cell number as his and admitted to possessing twenty grams of marijuana [*id.*]. He relinquished the marijuana to law enforcement [*id.*]. Special Agent Lerch said his experience and training viewed this amount too as a distribution amount of marijuana [*id.*].

Special Agent Lerch noted that an arrest warrant had been issued in the state criminal case for two counts of stalking and four counts of invasion of privacy [*id.* 22 (0284)]. This arrest warrant also identified Mr. Hollins' cellphone number [*id.*]. Special Agent Lerch said a query revealed that this phone number was registered to Mr. Hollins through its carrier, Metro PCS/T-Mobile [*id.*].

Special Agent Lerch recounted that on October 23, 2023, the believed victim (T.J.) told the South Bend Police Department that Mr. Hollins violated a protective order (via Facetime) by threatening her [*id.*]. T.J. advised SBPD that Mr. Hollins went between a residence on Newcome Street and one on South 24th Street [*id.*].

Special Agent Lerch also reported that he called the cellphone on October 25, 2023, and recognized Mr. Hollins' voice [*id.*]. With confirmation that the number belonged to Mr. Hollins, Special Agent Lerch advised the state judge that he met with Indiana State Police Trooper Brad Quackenbush on November 1, 2023, and Trooper Quackenbush informed him that the cellphone was currently located at the South 24th Street address [*id.* 23 (0285)].

At 11:23 a.m., the state court issued a search warrant for the South 24th Street location for the following items: "Evidence of Invasion of Privacy IC 35-46-1-15.1 including the cellular phone device with phone number [***-***-****] and the person of Robert Hollins Jr. who is currently wanted on a warrant in cause number 71D01-2309-F5-00035" [*id.* 24 (0286)].

B. *Second Challenged Search Warrant.*

The afternoon of November 1, 2023, Special Agent Lerch submitted a second search warrant application. His affidavit again described the South 24th Street residence as the place to be searched, along with three vehicles on the premises [*id.* 27-28 (0267-0268)]. He sought evidence of marijuana possession under Indiana Code § 35-48-4-11, unlawful possession of a firearm or ammunition as a felon under 18 U.S.C. § 922(g)(1), and possession of a controlled substance under Indiana Code § 35-48-4-7 [*id.* 29 (0269)]. He again recounted the two prior traffic stops [*id.* 29-30 (0269-0270)].

Special Agent Lerch also described his execution of the first search warrant. He said he observed hand-rolled cigarettes in the upstairs bedroom area, indicative of marijuana use [*id.* 30 (0270)]. He saw on the kitchen countertop a commercial grade mylar bag labeled "Italian ice cannabis flower" as well as a clear plastic bag containing a green leafy material akin to marijuana [*id.* 31 (0271)]. He saw a magazine in

3

the main living room area on a cabinet and a "Ronin style" chassis for a pistol in a closet [*id.*]. A drug-sniffing canine searched three vehicles on the premises, and the dog alerted to the presence of drugs [*id.*]. Special Agent Lerch also noted that Mr. Hollins' criminal history revealed a prior felony conviction and an active protective order, meaning he could not possess firearms or ammunition [*id.* 32 (0272)].

At 2:05 p.m., the state court issued a search warrant for the South 24th Street address for the following items: "Evidence of possession of marijuana in violation of Indiana IC 35-48-4-11, Felon in Possession of a Firearm or ammunition in violation of 18 U.S.C. 922(g)(1), and Possession of a controlled substance Indiana IC 35-48-4-7 to include but not limited to marijuana or other drugs, drug paraphernalia, firearms, ammunition, evidence of domain, United States Currency, cellular phones, and records showing possession and control of firearms" [*id.* 33 (0273)]. The state court also issued search warrants for the same evidence for the three vehicles on the premises [*id.* 35-41 (0275-0280)].

C. *Third Challenged Search Warrant.*

Special Agent Lerch returned with a third search warrant application. In his affidavit, he described the place to be searched as a Newcome Street residence [*id.* 42 (075)]. He sought evidence of dealing in a narcotic drug under Indiana Code § 35-48-4-1, evidence of heroin possession under Indiana Code § 35-48-4-6, unlawful possession of a firearm or ammunition as a felon under 18 U.S.C. § 922(g)(1), and possession of a controlled substance under Indiana Code § 35-48-4-7 [*id.*].

Once more, Special Agent Lerch described the March 23 and September 14 traffic stops [*id.* 43-44 (076-077)]. He described the results of the first November 1 search again [*id.* 44 (077)]. He also described an interview he conducted with DEA Task Force Officer Paul Strabavy and Mr. Hollins [*id.* 45 (078)]. In this interview (after being read his *Miranda* rights), Mr. Hollins said that an AR style rifle and cocaine were located at the South 24th Street location [*id.*]. Mr. Hollins also said he had two firearms on the couch at the Newcome Street address, as well as 50 grams of heroin [*id.*].

4

Special Agent Lerch called the 50 grams a distribution amount [*id.*]. He reported that Mr. Hollins had a prior felony conviction and had an active protective order against him—both precluding him from possessing firearms [*id.*]. He said he had seen Mr. Hollins come and go from the Newcome Street address [*id.*]. He said he received multiple anonymous tips, most recently on October 15, 2023, that Mr. Hollins dealt drugs from that address [*id.*].

At 4:32 p.m., the state court issued a search warrant for the Newcome Street address for the following evidence: "Evidence of dealing in a narcotic drug IC 35-48-4-1, evidence of possession of heroin IC 35-48-4-6, Felon in Possession of a Firearm or ammunition in violation of 18 USC 922(g)(1), and Possession of a controlled substance IC 35-48-4-7 to include but not limited to heroin or other drugs, drug paraphernalia, firearms, ammunition, evidence of domain, United States Currency, cellular phones, and drug ledgers" [*id.* 47 (080)].

The government proffers that the searches yielded the following results: the arrest of Mr. Hollins and the seizure of two cellphones, more than a half-kilogram of cocaine, approximately 75 grams of fentanyl, a large package of suspected drugs, six loaded guns, a cash counting machine, and more than $56,000 in bundled cash. Mr. Hollins constitutionally challenges the use of this evidence.

## DISCUSSION

The Fourth Amendment to the United States Constitution establishes the people's right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Caniglia v. Strom*, 141 S. Ct. 1596, 1599 (2021). The "touchstone of the Fourth Amendment is reasonableness." *United States v. Knights*, 534 U.S. 112, 118 (2001). The Fourth Amendment mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. A valid search warrant requires only three things: (1) an independent magistrate issuing it; (2) a showing of probable

5

cause; and (3) a particular description of the things to be seized and the place to be searched. *United States v. Harris*, 996 F.3d 451, 460 (7th Cir. 2021).

    A. *First Challenged Search Warrant.*

The court starts with the first search warrant of concern. Mr. Hollins attacks its probable cause. "[S]o long as the [judge] had a substantial basis for . . . [concluding] that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (quotations omitted). "Probable cause for a search warrant exists when the supporting affidavit presents a total set of circumstances creating a fair probability that evidence of a crime will be found." *United States v. Zamudio*, 909 F.3d 172, 175 (7th Cir. 2018) (quotations omitted). "Probable cause . . . is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014). It "depends on the totality of the circumstances—'the whole picture'—not each fact in isolation." *United States v. Rees*, 957 F.3d 761, 766 (7th Cir. 2020).

The probable cause requirement in the Fourth Amendment presupposes that there will be a "truthful" showing of probable cause. *Franks v. Delaware*, 438 U.S 154, 164-65 (1978). "This does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily." *Id.* at 165. But the affiant must believe or appropriately accept the information as true. *Id.*

Evidence must be suppressed only when the defendant can show through a preponderance of the evidence that "(1) the affidavit contained material false statements or omissions, (2) these false statements or omissions were made with deliberate or reckless disregard for the truth, and (3) these false statements or omissions were necessary to a finding of probable cause." *United States v. Williams*, 718 F.3d 644, 649 (7th Cir. 2013) (citing *Franks*, 438 U.S. at 155-56). "An officer similarly violates the Fourth Amendment if he intentionally or recklessly withholds material information from a probable cause affidavit." *Rainsberger v. Benner*, 913 F.3d 640, 647 (7th Cir. 2019). On the last prong, the court is to

6

"remove any overt falsehood from the affidavit—or else incorporate any omitted material facts that undermine probable cause, if an omission is what rendered the affidavit misleading—and see if probable cause remains." *United States v. Daniels*, 906 F.3d 673, 676 (7th Cir. 2018).

Mr. Hollins challenges a statement included in the first affidavit: "[I]t should be noted in your affiant's past law enforcement experience and training, the quantity of marijuana located in HOLLINS's possession during the traffic stop on September 14, 2023, was indicative of distribution of a controlled substance not that of personal use" [*see* 17 at 21 (0283)]. Mr. Hollins calls this statement false, as other states have legalized marijuana for personal use at amounts greater than twenty grams. *See* Cal. Health & Safety Code § 11362.1(a)(1) (28.5 grams); Mich. Comp. Laws § 333.27955(1)(a) (2.5 ounces or 71 grams). He says former South Bend Police officer Sheldon Scott will testify that twenty grams of marijuana is not indicative of distribution. He also proffers that, should the court hold a hearing, the falsity of Special Agent Lerch's statement will be revealed on crossexamination. For sake of today's motion, the court assumes both showings would be made.

The court might question whether this opinion is of the *Franks* ilk, particularly when the precise drug amount was included in the affidavit (not least presented to a ten-year veteran criminal law judge), but the government focuses on the third *Franks* prong and identifies a host of other bases for probable cause for this search warrant. For example, the affidavit includes Special Agent Lerch's qualifications, that an arrest warrant had been issued for Mr. Hollins for stalking and invasion of privacy, that the arrest warrant included his cellphone number, that he told police in two traffic stops that he had the same number, that the number was in fact registered to him, that a victim reported to police that he contacted her child and threatened her by phone in October 2023, that Mr. Hollins answered when the phone number was called by Special Agent Lerch, that Mr. Hollins would likely keep his phone near his person (particularly if he answered before), that the victim told police that he "goes between" the South 24th Street and Newcome Street locations, and that Trooper Quackenbush advised that Mr. Hollins' cellphone

7

was located at 24th Street [17 at 20-23 (0282-0285]. In short, any reference to an opinion about distribution amounts of marijuana was immaterial and unnecessary to a finding of probable cause to search for evidence of invasion of privacy, which was all this affidavit sought and all this search warrant sanctioned [17 at 24 (0286)].

Because Mr. Hollins has not made a preliminary showing that this statement on distribution was necessary to a probable cause finding, a *Franks* hearing isn't warranted. *See United States v. Clark*, 935 F.3d 558, 563 (7th Cir. 2019) (to obtain a *Franks* hearing a defendant must make a "substantial preliminary showing" that the warrant application contained a material falsity "that would alter the issuing judge's probable cause determination"); *United States v. Dessart*, 823 F.3d 395, 402 (7th Cir. 2016) (*Franks* hearings are "rarely held" because the "elements are hard to prove.").

Mr. Hollins also challenges the probable cause finding for this search warrant because it included hearsay—Trooper Quackenbush's information that the cellphone was at South 24th Street location. Mr. Hollins cites *United States v. Whitlow*, 339 F.2d 975, 979 (7th Cir. 1964) (citation omitted), which held that though "an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, was 'credible' or his information 'reliable.'" But the concerns about informants are altogether different than information supplied by law enforcement officers.

An "affidavit in support of a search warrant can rely on information from other officers and other hearsay if sufficiently reliable." *United States v. Schubert*, 528 F. Appx. 613, 616 (7th Cir. 2013). "Observations of fellow officers [] engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number." *United States v. Ventresca*, 380 U.S. 102, 111 (1965); *see also Suarez v. Town of Ogden Dunes*, 581 F.3d 591, 597 (7th Cir. 2009) (officer is "entitled to rely on the collective

8

knowledge of all the investigating officers in making his warrant request"). "[A]n officer is entitled to rely on information supplied by other officers or agencies for the purposes of a search warrant affidavit, provided that the information and its sources are accurately described for the reviewing judge's independent evaluation." *United States v. Ranke*, 480 F. Appx. 798, 803 (6th Cir. 2012).

Special Agent Lerch identified his source—Trooper Quackenbush, an officer and far more reliable than an informant—and Mr. Hollins has not challenged the accuracy of the cellphone being located at the South 24th Street residence. Special Agent Lerch met with Trooper Quackenbush that same day [17 at 23 (0285)]]. This statement could reliably support probable cause, not least when there was corroborating information that Mr. Hollins used both the Newcome Street and South 24th Street locations and that he answered the cellphone before—making it reasonable to find both him and his cellphone there.

Mr. Hollins also argues that this search warrant is less than particular. The particularity requirement limits "the authorization to search to the specific areas and things for which there is probable cause to search," and in doing so "ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987); *accord United States v. Jones*, 54 F.3d 1285, 1289-90 (7th Cir. 1995). This requirement is satisfied if "the description is such that the officer with a search warrant can, with reasonable effort[,] ascertain and identify the place intended." *United States v. McMillian*, 786 F.3d 630, 639 (7th Cir. 2015) (quoting *Steele v. United States*, 267 U.S. 498, 503 (1925)).

A search warrant need not be "elaborately detailed." *Archer v. Chisholm*, 870 F.3d 603, 616 (7th Cir. 2017). A warrant must be based on what officers know at the time it is issued. *United States v. White*, 416 F.3d 634, 638 (7th Cir. 2005). The law requires that "executing officers be able to identify the things to be seized with reasonable certainty and that the warrant description must be as particular as circumstances permit." *Jones*, 54 F.3d at 1290. The description of items to be seized limits the search to

9

areas where these items are likely to be discovered, *see Platteville Area Apartment Ass'n v. City of Platteville*, 179 F.3d 574, 579 (7th Cir. 1999), though "[d]ue regard for the practicalities of the situation always has been an integral part of adjudication of the particularity requirement," *Jones*, 54 F.3d at 1291.

"To determine whether a specific warrant meets the particularity requirement, a court must inquire whether an executing officer reading the description in the warrant would reasonably know what items are to be seized." *United States v. Hall*, 142 F.3d 988, 996 (7th Cir. 1998). "If detailed particularity is impossible, generic language is permissible if it particularizes the types of items to be seized." *Id.* "[N]othing is left to the discretion of the officer executing the warrant." *Andresen v. Maryland*, 427 U.S. 463, 480 (1976). Merely referring to items as "evidence of crime" is not particular enough. *United States v. Stefonek*, 179 F.3d 1030, 1032-33 (7th Cir. 1999).

But "[i]t is enough . . . if the warrant cabins the things being looked for by stating what crime is under investigation." *United States v. Bishop*, 910 F.3d 335, 337 (7th Cir. 2018). "A warrant may be thought 'too general' only if some more-specific alternative would have done better at protecting privacy while still permitting legitimate investigation." *Id.* "[A] warrant need not be more specific than knowledge allows." *Id.* at 338. For example, if police know that a certain document exists on a phone or a computer, or in a group of filing cabinets, they may search all documents on the phone, computer, or in the filing cabinets. *Id.* at 337. But if the police know that the document is in a certain folder in the phone or computer, or in just one filing cabinet, then the warrant must cabin the search to just that folder or just that cabinet. *Id.* at 337-38. That is why particularity is a "relative matter." *Id.* at 337.

"Mere reference to 'evidence' of a violation of a broad criminal statute or general criminal activity provides no readily ascertainable guidelines for the executing officers as to what items to seize." *United States v. George*, 975 F.2d 72, 76 (2d Cir. 1992); *see also In re Application of Lafayette Acad., Inc.*, 610 F.2d 1, 3 (1st Cir. 1979) (citing five federal criminal statutes not particular enough because it would sanction "a general rummaging for evidence of any type of federal conspiracy or fraud"); *United States v. Holzman*, 871

10

F.2d 1496, 1509 (9th Cir. 1989) (evidence of fraud generally not particular enough to save generic classifications of evidence to seize); *Voss v. Bergsgaard*, 774 F.2d 402, 405 (10th Cir. 1985) (broad search through copious records for evidence of violation of 18 U.S.C. § 371, the federal conspiracy statute, not particular enough); *United States v. Leary*, 846 F.2d 592, 602 (10th Cir. 1988) ("An unadorned reference to a broad federal statute does not sufficiently limit the scope of a search warrant" when the items to be seized are so generic as to cover "virtually every document that one might expect to find in a modern export company's office").

But "the language of a warrant is to be construed in light of an illustrative list of seizable items." *United States v. Riley*, 906 F.2d 841, 844-45 (2d Cir. 1990). With such a list, phrases like "other items that constitute evidence of the offenses" included in the description of items to be seized is sufficiently particular, provided the items listed are not overbroad themselves. *Id.* at 843; *see United States v. Neuhard*, 770 F. Appx. 251, 254 (6th Cir. 2019) ("Any and all records or evidence of the crime of child sexual assault/abuse, including but not limited to," followed by an illustrative list not overbroad.); *Hall*, 142 F.3d at 996-97 (similar). A more general phrase doesn't automatically doom a search warrant, including when its particularity elsewhere can give that general phrase meaning. *See Andresen*, 427 U.S. at 481-82.

This search warrant authorized a search at the South 24th Street address for "Evidence of Invasion of Privacy IC 35-46-1-15.1 including the cellular phone device with phone number [***-***-****] and the person of Robert Hollins Jr. who is currently wanted on a warrant in cause number 71D01-2309-F5-00035" [17 at 24 (0286)]. Mr. Hollins says this search warrant's description of the items to be seized allowed officers to search broadly for any evidence of a crime. The government argues the listing of the specific crime at issue, as well as the particularized listing of a cellphone and the person of Mr. Hollins, rendered this warrant sufficiently particular.

This search warrant was sufficiently particular. The crime of invasion of privacy was one but not the only limitation. This crime—knowingly or intentionally violating a protective order—isn't

complicated and would necessarily delimit the evidence as the means for such violation, quite unlike authorizing a random rummaging of all documents or property to find evidence of any old crime. The search warrant indeed went on to identify specifically one cellphone and Mr. Hollins himself.

This was not a general evidence-of-any-old-crime warrant, or a general warrant for a broad offense, but one that specified a search for a cellphone and a person, and more particularly related to the specified offense, and more particularly the offense described in specific detail within the incorporated affidavit. This gave the warrant additional depth in describing the property to be seized. *See Stefonek*, 179 F.3d at 1033 (Fourth Amendment considers the affidavit's description if properly incorporated); *United States v. Nafzger*, 965 F.2d 213, 215 (7th Cir. 1992) (particularity "may be evidenced by the search warrant itself [or] by the affidavit supporting the search warrant (if properly incorporated)").

The addition of the offense didn't make the warrant more discretionary but more particular. *See, e.g., Bishop*, 910 F.3d at 337 ("It is enough, these decisions hold, if the warrant cabins the things being looked for by stating what crime is under investigation."); *see also Neuhard*, 770 F. Appx. at 254. Mr. Hollins says this case is different than *Bishop*, which featured a search warrant limited to the contents of a cellphone, not an entire home; but Mr. Hollins hasn't explained why the entire residence could not be searched here, especially when the warrant allowed a search for something as small as a cellphone and based on probable cause of its use by Mr. Hollins.

The warrant was particular, and together with the affidavit offered more particular context yet, such that there was no chance that the "executing officer reading the description in the warrant would [not] reasonably know what items [were] to be seized," *Hall*, 142 F.3d at 996, not least when the executing officer here included the same one investigating the offense, *see Muhammad v. Pearson*, 900 F.3d 898, 905 (7th Cir. 2018); *United States v. Moss*, 936 F.3d 52, 60-61 (1st Cir. 2019). Mr. Hollins argues that the warrant could have been limited to items that showed any interactions or communications between Mr. Hollins and his victim during the period of June 27 to September 18, 2023, as well as items that showed his

12

knowledge of the protective order. These details were included in the attached affidavit. *See Jones*, 54 F.3d at 1291 (a particularity challenge fails "when an affidavit attached to the warrant or incorporated into it provides the necessary specificity.").

Mr. Hollins contends that Special Agent Lerch knew that the invasion of privacy occurred over the phone and in person to a specific victim (T.J.), so these particularizations should have been put into the warrant. *See United States v. Miles*, 2023 U.S. App. LEXIS 30066, 12 (7th Cir. Nov. 13, 2023) (quotations omitted) ("If officers knew which vehicles were associated with the drug-dealing activities, failure to identify [them] in the warrant would have violated the constitutional particularity requirement."). But these particulars were included, as executing officers were told to search for a specific cellphone, at a specific residence, and for a specific individual; and the remaining information about the arrest warrant, victim, and otherwise from the affidavit were incorporated into the warrant. *See Jones*, 54 F.3d at 1291. This search warrant does not fail for particularity.

The court thus denies the motion as to this search warrant, without need to address any other argument. *See United States v. Van Dreel*, 155 F.3d 902, 905 (7th Cir. 1998) ("[O]nce probable cause exists, and a valid warrant has been issued, the officer's subjective intent in conducting the search is irrelevant.").

B. *Second Challenged Search Warrant.*

For the next search warrant, Mr. Hollins challenges the statement that 20 grams is a distribution amount [17 at 30 (0270)]. This search warrant application sought permission to search for drugs, but it matters not whether the drugs were used for possession or distribution—because the warrant sanctioned only a search for marijuana possession, *see* Ind. Code § 35-48-4-11, or other narcotic possession, *see* Ind. Code § 35-48-4-7 [17 at 33 (0273)]. Thus, Special Agent Lerch's statement that this constituted a distribution amount was immaterial to a probable cause finding.[2] *See Daniels*, 906 F.3d at 676.

---

[2] For the same reason, though slightly jumping the analysis here, the court holds the same *vis-à-vis* this statement within the last search warrant affidavit [17 at 44 (077)]. *See infra.*

13

Mr. Hollins characterizes as false the statement in this search warrant affidavit that Special Agent Lerch knew that Mr. Hollins had an active protective order against him such that he could not possess firearms or ammunition [17 at 32 (0272)]. He argues that *United States v. Rahimi*, 61 F.4th 443, 448 (5th Cir. 2023), held that 18 U.S.C. § 922(g)(8)'s prohibition on possessing a firearm by a person subject to a domestic restraining order is unconstitutional under the Second Amendment on March 2, 2023, and before Special Agent Lerch applied for a warrant. Regardless of what *Rahimi* held, § 922(g)(8) is still the law in this circuit. And regardless, he still could not possess a firearm or ammunition as a felon, which Special Agent Lerch also cited as a basis for the search warrant.[3] *See also United States v. Regalado*, 2023 U.S. Dist. LEXIS 231293 (N.D. Ind. Dec. 20, 2023) (upholding constitutionality of 18 U.S.C. § 922(g)(1)).

Mr. Hollins also argues that probable cause for this search warrant was based on the fruits of the first search—namely, that Special Agent Lerch observed hand-rolled cigarettes in the upstairs bedroom area, a bag labeled "Italian ice cannabis flower," a green leafy substance in the kitchen, a pistol magazine in the living room, and a "Ronin style chassis" in a closet, and that a canine alerted the officers to drugs in the three vehicles on the premises [17 at 30-31 (0270-0271)]. Because the first search was performed pursuant to a valid search warrant, this subsequent search warrant could rest on these observations for probable cause. The court thus denies the motion as to this search warrant.

C. *Third Challenged Search Warrant.*

Mr. Hollins argues that the last search warrant affidavit contained material omissions: that police had information that Mr. Hollins lived at South 24th Street, not Newcome Street, and that evidence of another person's domain was pulled from the trash at Newcome Street [19-3, 19-4]. This too fails under the third *Franks* prong. The affidavit also reports that Mr. Hollins told law enforcement in an interview that drugs and firearms would be found at the Newcome Street address [17 at 45 (078)]. Thus, even if

---

[3] This same argument as to this statement's inclusion in the last search warrant [17 at 45 (078)] fails for the same reason.

14

this other information was omitted, there was reliable information that the drugs and firearms were at Newcome Street to support a probable cause finding. A *Franks* hearing is not warranted.

For the affidavit, Mr. Hollins argues that inclusion of the March 23 stop was too stale. *See Owens v. United States*, 387 F.3d 607, 608 (7th Cir. 2004) (three months too stale). "Passage of time is less critical when the affidavit refers to facts that indicate ongoing continuous criminal activity," *United States v. Spry*, 190 F.3d 829, 836 (7th Cir. 1999), and that was just so here. Though Mr. Hollins allegedly had marijuana in March, reliable information offered probable cause that he continued to possess marijuana in September [17 at 44 (077)]. And there was other information for probable cause, such as the drugs found at South 24th Street and his statement to law enforcement that he had drugs at the Newcome Street residence [*id.* at 44-45 (077-078)]. Even an arguably stale account of the March 23 stop isn't material.

Mr. Hollins also attacks as unreliable (but not false) the statement in this last affidavit that Special Agent Lerch received "anonymous tips" that Mr. Hollins was dealing drugs from the Newcome Street residence, corroborated only by Special Agent Lerch's observation that Mr. Hollins came and went from that address [17 at 45 (078)]. *See United States v. Gibson*, 928 F.2d 250, 253 (8th Cir. 1991) ("several innocent details . . . corroborated by the police in driving by the address given and by making a few telephone calls" not enough to show reliability). But this challenge to the probable cause finding fails as well, for Mr. Hollins told law enforcement that he kept drugs at Newcome Street. That was enough to support probable cause to search the Newcome Street address for drugs, even without an anonymous tip.

Mr. Hollins again argues that the third search was based on the fruits of the first search, but one valid search or search warrant won't invalidate another valid search warrant. The court denies the motion to suppress as to this last search warrant.

## CONCLUSION

The court DENIES the motion to suppress [17] and GRANTS the motion to seal [20]. The court will set a trial date by separate order.

SO ORDERED.

January 24, 2024                             *s/ Damon R. Leichty*
                                             Judge, United States District Court